PURITAN MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 98890.   Promulgated December 31, 1940.

*A. S. Grove, Esq.*, and *M. F. Pixton, C. P. A.*, for the petitioner.
*F. L. Van Haaften, Esq.*, for the respondent.

#### OPINION.

TYSON: The respondent has determined deficiencies in personal
holding company surtax in the amounts of $325.73 and $69.82 for the
calendar years 1934 and 1936, respectively, and 25 percent penalties,
amounting to $81.43 and $17.46, for those respective years, for peti-
tioner's failure to file personal holding company surtax returns.

Petitioner assigns error in the respondent's determination (1)
that its income for the years involved was derived from "royalties"
within the meaning of section 351 (b) (1) of the Revenue Acts of
1934 and 1936, and (2) that it is subject to the asserted 25 percent
penalties for failure to file personal holding company surtax returns
for those years.

Petitioner is a Georgia corporation, with its principal office in
Atlanta.  The parties have stipulated that, in so far as the owner-
ship of petitioner's outstanding capital stock during the taxable
years is concerned, the petitioner comes within the statutory defini-
tion of a "personal holding company."

For each of the years 1934 and 1936 petitioner filed an income
and excess profits tax return on the accrual basis, Form 1120, with
the collector for the Georgia district.  On its 1934 return, the peti-
tioner described its "Kind of Business" as "Owning Patent Rights
on Feed and Flour Formulae" and reported its "Gross Income" as
consisting entirely of "Royalties" in the amount of $1,658.63.  On its
1936 return, the petitioner described its "Kind of Business" as "Flour
and Feed Formulae" and reported its "Gross Income" as consisting en-
tirely of "Royalties" in the amount of $1,364.23.  The petitioner
did not file a personal holding company surtax return, Form 1120H,
for either of the years 1934 or 1936.  Pursuant to the provisions of
section 3176, of the Revised Statutes, the Commissioner made and
filed for the petitioner a personal holding company surtax return,
Form 1120H, for each of those years and such returns show the Com-
missioner's computation of the taxes and penalties in controversy in
this proceeding.

Prior to and during the taxable years in question all of the petitioner's outstanding capital stock, of the par value of $1,000, was owned by the Atlanta Flour & Grain Co., and the officers of the latter were also the officers of the former. The petitioner was incorporated in 1926 for the purpose of keeping the Atlanta Flour & Grain Co. from becoming involved in nuisance law suits which might arise in connection with the latter's production of flour and feeds.

The petitioner did not own a mill or plant and never manufactured any products; it made no purchases of materials of any kind; it had no salesmen or other employees and paid no salaries; it had no bank account and it kept no cash on hand. All of petitioner's expenses and bills, which consisted only of various taxes in small amounts totaling less than $90 for each of the years in question, were paid by the Atlanta Flour & Grain Co., but no reference to such arrangement was contained in petitioner's corporate minutes.

The minutes of a meeting of petitioner's directors held on January 26, 1927, are in part as follows:

There being no old business to come before the directors, MORRIS ABELMAN stated that he had made an agreement with the ATLANTA FLOUR & GRAIN COMPANY as to a royalty to be paid to the PURITAN MILLS by the ATLANTA FLOUR & GRAIN COMPANY for the use of PURITAN MILLS brands etc. The royalty for the year 1926 amounted to $1892.68, same amount being placed to the credit of the PURITAN MILLS.

Petitioner's books of account were maintained in a double entry ledger kept by its secretary-treasurer and there were entered therein, as income, and carried into surplus, the amounts of petitioner's bills paid and also the amounts termed royalties credited to petitioner by the Atlanta Flour & Grain Co. during each year. Such income was accumulated in petitioner's surplus account until dividends were declared at irregular times to its sole stockholder, the Atlanta Flour & Grain Co.

The Atlanta Flour & Grain Co. was a jobber of flour and feeds under various trade and brand names. It purchased, entirely in its own name, different kinds of flour and raw grains. In its own blending plant it produced from the flour and raw grain so purchased various brands of flour and feeds, all of which were put up in bags bearing the inscription "Manufactured by Puritan Mills", and also the name of one of various brands, some of which were owned by the Atlanta Flour & Grain Co. The Atlanta Flour & Grain Co. paid all costs of raw materials used by it and all of the expenses in connection with its blending operations and its retail sales through its own salesmen. In the instance of sales made within the city of Atlanta the customers were billed on billheads of the Atlanta Flour & Grain Co. In the instance of all orders received from customers

outside the city of Atlanta the invoices bore the name of Puritan Mills, the petitioner, because such customers preferred to deal with a mill rather than a jobber. The accounts receivable arising out of all of those sales were carried on the books of the Atlanta Flour & Grain Co. and actually constituted its own accounts receivable. The petitioner's name was used by the Atlanta Flour & Grain Co. on all of the latter's products, and, pursuant to an arrangement between those two companies, the amounts credited to petitioner and termed royalties for each year were computed on the basis of a percentage of the retail sales during each year as to which the invoices bore the petitioner's name. Such credits to petitioner were made for the use of its name by the Atlanta Flour & Grain Co.

The petitioner contends that the amounts shown by the record to have been credited to it by the Atlanta Flour & Grain Co. during each of the taxable years 1934 and 1936, were inadvisedly termed royalties and that such amounts constituted commissions on sales or voluntary payments by the parent company to enable petitioner to meet its expenses. Petitioner further contends that its income, received through such credits during the taxable years, was not derived from "royalties" within the meaning of that word as used in prescribing the income of a "personal holding company" as defined by section 351 (b) (1) of the Revenue Acts of 1934 and 1936, the pertinent portions of which are set out in the margin.[1]

The respondent has determined, and now contends, that the amounts credited to petitioner as royalties during 1934 and 1936 constituted the receipt of income derived from "royalties" within the meaning of section 351 (b) (1), *supra*, and Article 351–2 (1) of Regulations 86 and 94, which article provides, in part, that "The term 'royalties' includes amounts received for the use of or for the privilege of using patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property."

In our opinion this record clearly establishes that the credits here in question represented payments to petitioner by the Atlanta Flour & Grain Co. under an arrangement between those two companies, for the latter's use of petitioner's name, under which, as a trade name or trade-mark, the Atlanta Flour & Grain Co. sold all of its own products solely for its own account. Aside from allowing the use of its own name, and probably some trade brands, to its parent company, the petitioner, so far as this record discloses, rendered no services

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

(b) DEFINITIONS.—As used in this title—

(1) The term "personal holding company" means any corporation * * * if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, * * * and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. * * *

and sold no products of any kind to anyone. We hold that such payments constituted income derived from "royalties" and that the petitioner was a "personal holding company" within the meaning of section 351 (b) (1), *supra*, as determined by respondent. Further, since no issue has been raised as to the correctness of the respondent's computation of the petitioner's "undistributed adjusted net income" and the personal holding company surtax liability thereon for the years 1934 and 1936, we affirm the amounts of the deficiencies here in controversy as determined by the respondent.

The petitioner having failed to file personal holding company surtax returns for 1934 and 1936, the imposition of the asserted 25 percent penalties for those years is mandatory. *O'Sullivan Rubber Co.,* 42 B. T. A. 721, 725, and *Olean Times Publishing Co.*, 42 B. T. A. 1277.

*Decision will be entered for the respondent.*